## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
JILL CORDAN                         :
                                    :
          Plaintiff,                :
                                    :
     v.                             :        Civil Action No.
                                    :
JEFFREY MITCHELL, TOMMY             :
RYAN and EAST COCALICO              :
TOWNSHIP,                           :
                                    :        JURY TRIAL DEMANDED
                                    :
          Defendants.               :
_____:
```

## COMPLAINT

AND NOW, come the Plaintiff, Jill Cordan, by and through her attorneys,

Mobilio Wood, and hereby submit the instant Complaint and in support thereof

aver as follows:

## INTRODUCTION

1.     Plaintiff brings the instant action to redress harm caused by

Defendants' violations of their rights as secured by 42 U.S.C. § 1983 as well as

pursuant to state law.

## PARTIES

2.     Plaintiff, Jill Cordan ("Plaintiff Cordan") is an adult individual,

citizen of the Commonwealth of Pennsylvania.

3.      Defendant, Jeffrey Mitchell, ("Defendant Mitchell") was, at all times material hereto, a member of the Board of Supervisors for East Cocalico Township.

4.      Defendant, Tommy Ryan, ("Defendant Ryan") was, at all times material hereto, the Township Manager for East Cocalico Township.

5.      Defendant, East Cocalico Township ("Defendant Township") is a municipality located in Lancaster County, Pennsylvania, and is governed by a Board of Supervisors.

6.      Defendants Mitchell, Ryan and Jeffrey are properly sued directly under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

**JURISDICTION AND VENUE**

7.      This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying

federal claims and derive from a common nucleus of operative facts pursuant to 28 U.S.C. § 1367.

8.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

9.    Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

10.    At all times material hereto, Plaintiff Cordan was a citizen of East Cocalico Township and a gay woman.

11.    On January 3, 2022, Plaintiff took office as the elected Tax Collector for ECT.

12.    Prior to her election, Plaintiff was a citizen of ECT and was outspoken with regard to matters concerning ECT.

13.    Specifically, Plaintiff raised concerns with the Board of Supervisors concerning possible fraud in the fire department.

14.     Before she was sworn in to office, Plaintiff was appointed to a committee to investigate a possible change to the police union's retirement plan administration.

15.     At this same time, Defendant Mitchell was the Treasurer for the East Cocalico Township Board of Supervisors.

16.     Immediately after Plaintiff's election, Defendant Mitchell, individually and on behalf of East Cocalico Township, embarked on a campaign to discredit Plaintiff and destroy her reputation due to her exercise of free speech and the fact that she is/was gay, and a woman.

17.     Defendant Mitchell first publicly accused Plaintiff of misconduct relative to her involvement with the police pension committee.

18.     Defendant Mitchell spread rumors amongst ECT staff and officials that Plaintiff burglarized the Township office with another individual in order to alter Township documents.

19.     Then, after Plaintiff was sworn in, Defendant Mitchell ensured that Plaintiff was provided with substandard equipment, intentionally impeding her ability to perform her duties as Tax Collector.

20.     Plaintiff then filed a formal, hostile work environment complaint against Defendant Mitchell with the law firm of Eckert Seamens, which represents ECT.

21.     Two other Township officials, Financial Administration Judy Loomis, and ECT Police Chief Derrick Keppley, also filed formal complaints against Defendant Mitchell.

22.     In retaliation for Plaintiff filing the formal hostile work environment complaint against Defendant Mitchell, Board Chairman, Lorenzo Bonura, instructed Eckert Seamans to send Plaintiff a letter demanding she perform certain duties, duties which she had already performed and which Bonura had already given his approval of.

23.     The letter was intended as an intimidation tactic in order to silence Plaintiff, to deter her from exercising her right to free speech and to keep her from filing any further complaints against Defendant Mitchell.

24.     In February of 2023, Defendant Tommy Ryan was hired as ECT's Township Manager.

25.     At or about that same time, ECT was considering changing tax management systems.

26.     The possible change in tax systems, and ECT's delay in calculating hydrant and streetlight taxes, delayed Plaintiff from preparing tax invoices to be sent to ECT citizens.

27.     Nevertheless, Defendants Mitchell and Bonura publicly blamed Plaintiff for the delay in tax invoicing.

28.    At an October 2023 public meeting, Defendant Ryan publicly derided Plaintiff as the "worst tax collector ever".

29.    At or about that same time, ECT and Defendants Mitchell, Bonura and Ryan hatched a plan to financially punish Plaintiff for her exercise of free speech and formal complaint filing.

30.    Specifically, ECT and Defendant Mitchell, Bonura and Ryan proposed that responsibility for the collection of Local Services Taxes ("LST") would be stripped from Plaintiff and outsourced to Lancaster County Tax Collection.

31.    As Plaintiff received commissions from the collection of LSTs, this proposal would cost Plaintiff approximately $20,000.00 in yearly revenue.

32.    The proposal was approved, and Plaintiff suffered the aforementioned economic harm.

33.    At or about this same time, Plaintiff sent the Board of Supervisors a letter, explaining that, as a result of Defendant Ryan's comments concerning her being the worst tax collector ever, she would no longer communicate with him directly.

34.    Shortly thereafter, Defendant ECT filed a lawsuit against Plaintiff, demanding that she perform duties that she was already performing.

35.    In March of 2024, Plaintiff discovered that Defendant Jeffrey publicly stated that, "We need to get Jill out of the building because she is a lesbian and lives with a woman".

36.    Plaintiff and Defendant ECT settled the aforementioned lawsuit, (although the docket remains open) but only after Plaintiff refused to agree to language that would preclude her from bringing the instant suit.

37.    Thereafter, in retaliation for Plaintiff's exercise of her right of free speech, her filing of a formal hostile work environment complaint and because she is a gay woman, Defendants hatched a second plot aimed at economically harming Plaintiff.

38.    Defendants proposed that fire hydrant and street light taxes be "rolled into" the Township real estate taxes, which would deprive Plaintiff of an additional $10-11k a year in tax collecting commissions.

39.    The proposal was solely intended to unlawfully deprive Plaintiff of commissions in order to encourage her resignation and/or to punish her for her conduct aforesaid.

40.    The proposal was approved, and Plaintiff suffered the aforementioned economic harm.

41.    Then, in a shocking betrayal of public trust, and in a possible violation of the Sunshine Act, Defendant ECT removed all video recordings of all ECT

public meetings that would corroborate many of Plaintiff's allegations against Defendants.

42.     Once the damaging videos were deleted, Defendant ECT returned to its previous practice of making new videos available via YouTube.

43.     Finally, on or about May 15, 2025, the East Cocalico Republican Committee circulated a mailer among registered republicans falsely accusing Plaintiff of mismanagement of her office, and having 100+ pages of complaints lodged against her.

44.     It is believed and therefore averred that the mailer is based on false information provided by Defendant Mitchell.

45.     On May 20, 2025, Plaintiff, who was a candidate for reelection as Treasurer, lost the republican primary in a landslide, as a direct result of the false and defamatory comments from Defendants.

46.     The aforementioned conduct by the Defendants, in their official capacity as employees, representatives and officials for ECT, by and through the Township and Township employees, constitutes a violation of Plaintiff's constitutionally protected rights.

47.     All of the above-described acts were committed intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Plaintiff's federally protected rights, and were committed pursuant to the

preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training and supervision of the Defendants, acting under color of state law.

48.    With deliberate indifference to the rights of citizens to be free from retaliation for exercising their First Amendment rights and free from oppression as a result of their protected status under the 14th Amendment, the Defendant's have ongoingly encouraged, tolerated, ratified, and acquiesced to a dangerous environment of retaliation to the exercise of such rights by:

a)    Failing to conduct sufficient training or supervision with respect to the protected speech rights of citizens to question the actions of the Board of Supervisors, the Township and their employees, agents and assigns;

b)    By failing to adequately punish retaliation against members of the public who exercise their protected speech rights to question the actions of the Board of Supervisors, the Township and their employees, agents and assigns;

c)    By training Township employees and officials to retaliate against members of the public who exercise their protected speech rights;

d)    By tolerating the use of retaliation based on protected speech;

e)    Establishing official policies that permit, encourage or direct the use of retaliation against citizens who question the actions of the Board of Supervisors, the Township and their employees, agents and assigns; and

f)      Establishing and/or acquiescing to customs and practices that permit, encourage and/or direct the use of retaliation against citizens who question the actions of the Board of Supervisors, the Township and their employees, agents and assigns.

49.    The aforementioned policies, practices, habits, custom, usage and/or training creates an environment where citizens are retaliated against for the expression of First Amendment Rights and for merely existing as a protected status under the 14th Amendment.

50.    Plaintiff continues to suffer ongoing emotional distress including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, embarrassment, and humiliation, all due to Defendants' conduct aforesaid.

51.    Plaintiff is also entitled to punitive damages on all of her claims.

## COUNT I

### 42 U.S.C. § 1983
### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
### (Plaintiff Cordan v. Defendants)

52.    Plaintiff Cordan hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any
rights, privileges or immunities secured by the constitution and law
shall be liable to the party injured in an action at law, suit in equity, or
other appropriate proceeding for redress . . .

54.    Plaintiff in this action is a citizen of the United States and Defendants

are persons for purposes of 42 U.S.C. § 1983.

55.    Defendants were, at all times relevant hereto, acting under the color of

state law in their capacity as Township supervisors and employees, agents,

officials, and/or assigns, and by and through their agents and representatives, and

their acts or omissions were conducted within the scope of their official duties or

employment.

56.    At the time of the complained of events, Plaintiff had clearly

established constitutional rights to be free from retaliation for the exercise of

protected speech.

57.    Any reasonable person knew or should have known of this right at the

time of the complained of conduct as it was clearly established at that time.

58.    Plaintiff exercised her constitutionally protected rights to:

a)    Raising concerns regarding possible fraud in the fire

department;

b)    Voice her opinions concerning the police union's retirement

plan;

c)    File a formal hostile work environment complaint; and

11

     d)     Complaint to the Board of Supervisors regarding Defendant Ryan's conduct;

59.     In response to Plaintiff exercising the aforesaid constitutionally protected rights, Defendants, by and through their agents and representatives, retaliated as follows:

     a)     Publicly accused Plaintiff of engaging in wrongdoing;

     b)     Accused Plaintiff of burglarizing the Township building;

     c)     Providing Plaintiff with substandard equipment, impeding her ability to perform her duties;

     d)     Sent a threatening letter to Plaintiff regarding her job performance;

     e)     Publicly blaming Plaintiff for Defendants failure to send tax invoices in a timely manner;

     f)     Publicly referring to Plaintiff as "the worst tax collector ever";

     g)     Stripping Plaintiff of approximately $30,000 in revenue by outsourcing tax collection and changing collection efforts for the Township; and

     h)     Suing the Plaintiff, demanding she perform a job she was already performing.

60.    Retaliatory animus for Plaintiff's exercise of her constitutionally protected right aforesaid was a substantially motivating factor in the conduct aforesaid.

61.    The conduct of the Defendants in retaliation for Plaintiff's protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

62.    Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

63.    The acts or omissions of Defendants were moving forces behind Plaintiff's injuries.

64.    The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

65.    Defendants are not entitled to qualified immunity for the complained of conduct.

66.    The Defendants to this claim at all times relevant hereto were acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

## COUNT II

**42 U.S.C. § 1983**
**DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS,**
**TRAINING, AND SUPERVISION IN VIOLATION OF THE FIRST**
**AMENDMENT**
**(Plaintiff Cordan v. Defendants)**

67.     Plaintiff Cordan hereby incorporates all other paragraphs of this

Complaint as if fully set forth herein.

68.     42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation,
custom or usage of any state or territory or the District of Columbia
subjects or causes to be subjected any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any
rights, privileges or immunities secured by the constitution and law
shall be liable to the party injured in an action at law, suit in equity, or
other appropriate proceeding for redress . . .

69.     Plaintiff in this action is a citizen of the United States and Defendants

to this claim are persons for purposes of 42 U.S.C. § 1983.

70.     The Defendants to this claim at all times relevant hereto were acting

under the color of state law.

71.     Plaintiff had the following clearly established rights at the time of the

complained of conduct: the right to exercise her constitutional rights of free speech

under the First Amendment without retaliation.

72.     Defendants knew or should have known of these rights at the time of

the complained of conduct as they were clearly established at that time.

14

73.     The acts or omissions of this Defendants, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused her other damages.

74.     Defendants are not entitled to qualified immunity for the complained of conduct.

75.     Defendants were, at all times relevant, policymakers for Defendant ECT, and in that capacity established policies, procedures, customs, and/or practices for the same.

76.     These Defendants developed and maintained policies, procedures, customs, and/or practices, specifically, the policies, procedures, customs, and/or practices of encouraging employees to file frivolous grievances, encouraging employees to file false police reports, advising and encouraging employees to take extended leaves of absence in order to punish a public servant, publicly humiliating political opponents, and utilizing law enforcement to restrict building access to certain individuals who you disagree with.

77.     This conduct exhibited deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

## COUNT III

**VIOLATION OF EQUAL PROTECTION CLAUSE OF THE 14th
AMENDMENT TO THE UNITED STATES CONSTITUTION
(Plaintiff Cordan v. Defendants)**

78.    Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

79.    Throughout the course of Plaintiff's tenure as treasurer/tax collector for ECT, she was subjected to severe and pervasive harassment by Defendants due to her status as a gay, female.

80.    The harassment endured by Plaintiff detrimentally affected here, and would have detrimentally affected a similarly situated reasonable person.

81.    Plaintiff complained to Defendants and their representatives about Defendants' harassment, but Defendants refused to correct the misconduct.

82.    Defendants' harassment of Plaintiff was open and notorious, such that Defendants should have been aware of the harassment even if Plaintiff had not filed a complaint.

83.    Defendants failed to take reasonable steps to prevent harassment in the workplace, as well to ensure that an adequate complaint-reporting system existed.

84.     By failing to remediate Defendants' harassment of Plaintiff despite actual knowledge thereof, Defendants acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

85.     As a result of Defendants' conduct, Plaintiff has been harmed.

## COUNT IV

**CIVIL CONSPIRACY**
**(Plaintiff Cordan v. Defendants)**

86.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

87.     Defendants participated in a conspiracy to violate the Plaintiff's Constitutional rights.

88.     Direct evidence of conspiracy is rarely available and therefore, the existence of a conspiracy must usually be inferred from the circumstances.

a)     As Board members and the Township Manager, the Defendants coordination and cooperation was necessary to acquire the appropriate votes, and support to engage in the conduct aforesaid; and

b)     The Defendants acted fully in concert – one with the other, obviously demonstrating the common plan, scheme or design that they agreed upon, when the constitutional depravations occurred.

89.     Plaintiff believes and therefore avers that Defendants acted in accord with the custom and practices of ECT to ensure that no evidence of wrongdoing exists.

90.     This all constitutes clear evidence of a civil conspiracy engaged in by Defendants and those co-conspirators who are presently unidentified, who agreed to, and did, conceal independent evidence of Defendants' wrongdoing in this case.

91.     Each of the foregoing intentional acts and/or intentional omissions, evidences a meeting of the minds and an understanding between the Defendants, which has as its successful object, the deprivation of the constitutionally protected rights of the Plaintiff.

92.     It is also clear from the foregoing that the Defendants, and each of them together:

        a)     Engaged in a single plan, the essential nature and scope of which was known by them;

        b)     Executed that plan in a coordinated way and by a common design which had as its probable and natural consequence the violation of Plaintiff's Constitutional rights as set forth herein;

        c)     Acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which was an agreement

18

between them to inflict a wrong against, or injury upon, Plaintiff as more fully set forth herein; and

93.    As a direct and proximate result of the foregoing, and the overt acts described herein, Plaintiff suffered the damages enumerated.

94.    These actions and circumstances, pre-discovery, would, in and of themselves, warrant a reasonable fact finder to concluding that the Defendants, formed a conspiracy to deprive the Plaintiff of her Constitutionally protected rights because:

a)    They formed a combination by which they, together, aided and abetted the commission of unconstitutional and criminal acts of assault committed by Defendants, and its cover-up;

b)    This constitutes a "conspiracy"; and

c)    By being state actors who used their conspiracy to deprive the Plaintiff of here Constitutionally protected civil rights as described, each is liable for the harms inflicted upon the Plaintiff as a result of their concerted actions.

95.    This conspiracy, as it applied to the Plaintiff herein, was an express or implied agreement between the Defendants, to deprive the Plaintiff of her Constitutional rights, inter alia, to be free from oppression due to her status as a gay, female, and to be free to speak freely against the Defendants.

96.     The Defendants were voluntary participants in the common venture, understood the general objectives of the plan, and knew it involved the likelihood of the deprivation of Constitutional rights, accepted those general objectives, and then agreed, either explicitly or implicitly, to do their part to further those objectives.

97.     The Defendants then did each, either act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of Plaintiff's Constitutional rights as alleged.

98.     An actual deprivation of those rights did occur to the Plaintiff resulting from the said agreement or common design, and as a foreseeable consequence thereof.

99.     The Defendants, and each of them, are jointly and severally responsible for the injuries caused by their fellow co-conspirators even if, or when, their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

100.    As a result of the civil conspiracy entered into and acted upon by these Defendants, Plaintiff suffered a deprivation of her Constitutional rights, and suffered damages as stated herein.

## <u>COUNT V</u>

### DENIAL OF EQUAL RIGHTS UNDER THE LAW - 42 U.S.C. §1981
### (Plaintiff Cordan v. Defendants)

20

101.   Plaintiff hereby incorporates all other paragraphs of this Complain as if fully set forth herein.

102.   In the actions described above, the Defendants deprived the Plaintiff of rights protected by the Constitution of the United States of America, and the Defendants intended to deny the Plaintiff rights enjoyed by male, heterosexual citizens of the United States.

103.   Defendants were aware of the denial of equal rights under the law or were willfully blind, and have developed a practice, policy and custom of depriving gay, females equal rights under the law, and either ignored or encouraged the Constitutional violations described above.

104.   The Plaintiff suffered harm due to the Defendants' violations of her Constitutional rights with the intent to deprive him of rights enjoyed by white citizens.

105.   42 U.S.C. §1981 confers on all persons the right to "the full and equal benefit of all laws and proceedings for the security of persons and property… " 42 U.S.C. §1981(a).

106.   Section 1981 provides extensive equal protection rights, but is properly brought pursuant to Section 1983, which provides the remedy for violations of Section 1981 by state actors.

107.   Due to its legislative history and emphasis on equal treatment under the law, Section 1981 is designed to provide a remedy where, as here, discrimination based upon sex and sexual orientation is presented as an element of the claim.

108.   Defendants, acting under color of state law, and with animus towards Plaintiff as a gay, female, unlawfully deprived Plaintiff of her constitutional rights.

109.   The Plaintiff was a member of a protected class of persons and Defendants, acting as agents of the government, under color of state law, treated similarly situated individuals outside of the protected class differently, thereby evidencing purposeful discrimination against the Plaintiff.

110.   Defendant Township is liable for the actions of the Defendants on the basis of Monell assertions made hereinbefore and the fact that the municipalities' deliberate conduct was the moving force.

111.   Likewise, Defendants are liable for the actions of Defendants based upon the allegations of their supervisory and policymaking liability made hereinbefore, and because the acts of their subordinates were caused by their deliberate indifference, knowledge and acquiescence, which may fairly be said to represent official municipal custom or policy.

112.   The Defendants are liable for their personal involvement in the commission of the acts complained of here.

113.   The likelihood is that, but for the alleged acts, omissions committed by the other Defendants, and the acquiescence in the denial of equal rights under the law animated by same, the injuries inflicted upon the Plaintiff would not have occurred.

## COUNT VI

### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS - 42 U.S.C. §1985
### (Plaintiff v. Defendants)

114.   Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

115.   As described above, the Defendants conspired to deny the Plaintiff rights afforded heterosexual, male citizens by unlawfully retaliating against her and then conspiring to conceal what actually occurred.

116.   This conspiracy was engaged in with the intent to deprive the Plaintiff of her Constitutional rights and equal protection of the law.

117.   The Plaintiff suffered harm due to the Defendants' conspiracy to violate her Constitutional rights with the intent to deprive him of equal protection of the law.

118.   As a direct and proximate result of said conspiracy, the Plaintiff was injured and suffered damages as stated herein, and further seeks damages under 42 U.S.C. §1985.

119. Specifically, the agreement to deprive the Plaintiff of her rights was motivated by anti-gay, anti-female discriminatory animus on the parts of Defendants and reflected the custom and culture established within the Township encouraging its officials and employees to engage in constitutional deprivations targeted at members of the community, such as Plaintiff.

120. Motives, much less motives that have racially discriminatory animus as their source, are not frequently broadcast at the moment they are acted upon. It is for this reason that such animus is generally identified by circumstantial evidence that the discriminatory offenders acted in accordance with such animus before after the discriminatory behavior at issue, not only at the very moment of the challenged conduct.

121. Based upon information and belief, Plaintiff believes and therefore avers that a reasonable fact-finder, considering all the material facts, would reasonably conclude that the Defendants' selected course of action which they followed here because of Plaintiff's sex and sexual orientation, and that such a conclusion would logically result from consideration of, inter alia, the following factors:

a)    The racial composition of the parties, with the Plaintiff being a gay woman, and all Defendants heterosexual men; and

b)    Only a gay woman's constitutional rights were violated.

24

122.    The above factors, individually, would permit a reasonable jury to believe that the unlawful and unconstitutional acts committed by Defendants were motivated by sex and sexual orientation discriminatory animus, which was carried out as part of a preconceived scheme or common understanding to deprive the Plaintiff, directly or indirectly, of the equal protection of the law.  However, when combined, these factors lead to the unavoidable conclusion that such was the case.

123.    Defendants are liable for their personal involvement in the commission of the acts complained of here.

124.    The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Cordan v. Defendants)

125.    The above paragraphs are incorporated by reference as if fully set forth at length.

126.    The Defendants' actions aforesaid, constitutes extreme and outrageous conduct.

127.    As a result of Defendants' extreme and outrageous conduct, Plaintiff continues to suffer ongoing emotional distress including sadness, anxiety, stress,

anger, depression, frustration, sleeplessness, embarrassment, and humiliation, all due to Defendants' conduct aforesaid.

## COUNT IIX

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRERSS
### (Plaintiff Cordan v. Defendants)

128.    The above paragraphs are incorporated by reference as if fully set forth at length.

129.    The Defendants' actions aforesaid, constitutes extreme and outrageous conduct.

130.    As a result of Defendants' extreme and outrageous conduct, Plaintiff continues to suffer ongoing emotional distress including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, embarrassment, and humiliation and all due to Defendants' conduct aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

a.  compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

26

b.  economic losses on all claims allowed by law;

c.  special damages in an amount to be determined at trial;

d.  punitive damages on all claims allowed by law against individual

Defendants and in an amount to be determined at trial;

e.  attorneys' fees and the costs associated with this action under 42 U.S.C. §

1988 including expert witness fees, on all claims allowed by law;

f.  pre- and post-judgment interest at the lawful rate; and

g.  any further relief, including injunctive relief, that this court deems just and

proper, and any other appropriate relief at law and equity.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

**Mobilio Wood**

Date: 6.23.25          BY:    */s/Matthew Mobilio*
Matthew Mobilio, Esq. (I.D. No. 209439)
4728 Hamilton Boulevard
Allentown, PA 18103
Phone: (610) 882-4000
Fax: (866) 793-7665
matt@mobiliowood.com