**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

JILL CORDAN
          Plaintiff,

      v.

JEFFREY MITCHELL, *et al*
          Defendants.

     :
     :
     :
     :     Civil No. 5:25-cv-03179-JMG
     :
     :
     :

---

**MEMORANDUM OPINION**

**Gallagher, J.**
                                                     **June 30, 2026**

      Plaintiff, Jill Cordan ("Plaintiff"), alleges that Defendants, Jeffery Mitchell ("Defendant Mitchell"), Tommy Ryan ("Defendant Ryan"), and East Cocalico Township ("ECT" or "Defendant Township") (collectively the "Defendants") engaged in a campaign to discredit Plaintiff and destroy her reputation because she spoke out against ECT and because she is a gay woman. Plaintiff brings claims against Defendants for retaliation in violation of the First Amendment, 42 U.S.C. § 1983, the Equal Protection Clause, civil conspiracy, conspiracy to interfere with civil rights under 42 U.S.C. § 1985, intentional infliction of emotional distress, and violating Pennsylvania's local tax collection law, 72 P.S. § 5511.36a. For the reasons set forth below, Defendants' Motion to Dismiss is granted.

## I.     BACKGROUND

      Plaintiff is an openly gay woman who was elected as the Tax Collector for ECT and took office on January 3, 2022. ECF No. 20 ¶¶ 10–11. Prior to her election, Plaintiff was an outspoken resident of Defendant ECT who raised concerns about local governance, including alleged misconduct involving the Township Fire Department and police pension matters. *Id.* ¶¶ 12–14.

      Following her election, Plaintiff alleges that Defendant Mitchell, a member of the Board of Supervisors, publicly accused her of misconduct and repeated prior allegations that she had

burglarized Township offices. *Id.* ¶¶ 18–22. Plaintiff contends these accusations were false and that, after she criticized Defendant Mitchell publicly, Defendants began to engage in a pattern of retaliatory conduct against her. *Id.* ¶¶ 20, 23–24.

After taking office, Plaintiff alleges she was denied a budgeted new laptop and instead provided inadequate equipment that interfered with her job performance. *Id.* ¶¶ 25–28. In January 2023, she filed a hostile work environment complaint against Defendant Mitchell, after which Township's counsel allegedly sent her a letter demanding that she perform duties she had already completed. *Id.* ¶¶ 29, 31–32. Plaintiff asserts that similarly situated officials, specifically Financial Administrator Judy Lumis, and ECT Police Chief Darrick Keppley, who filed complaints were not treated the same. *Id.* ¶¶ 30, 33.

Plaintiff further alleges that, after Defendant Ryan became Township Manager in February 2023, Defendants publicly blamed her for delays in tax invoicing and disparaged her performance, including referring to her as the "worst tax collector ever." *Id.* ¶¶ 36, 40–41. In November 2023, the Township adopted an ordinance transferring responsibility for certain tax collections, which reduced Plaintiff's annual compensation. *Id.* ¶¶ 44–47.

Plaintiff also alleges that Defendants interfered with her ability to perform her duties by challenging, and ultimately preventing her, from maintaining a deputy. *Id.* ¶¶ 51–61. She further asserts that, in March 2024, Defendant Mitchell made a statement indicating she should be removed from her position because of her sexual orientation. *Id.* ¶ 62.

Following the settlement of a mandamus action in October 2024, Plaintiff alleges that Defendants again reduced her compensation through additional tax policy changes. *Id.* ¶¶ 65, 68–72. Finally, Plaintiff claims that false information provided by Defendants led to a political mailer that harmed her reputation and contributed to her loss in a 2025 primary election. *Id.* ¶¶ 74–76.

Plaintiff filed this action on June 23, 2025. ECF No. 1. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 22, 2025. ECF No. 9. On October 28, 2025, the Court granted the motion in full but permitted Plaintiff to file an amended complaint. ECF No. 17. Plaintiff filed an Amended Complaint on November 17, 2025. ECF No. 20. Defendants again moved to dismiss on December 1, 2025. ECF No. 21. Plaintiff opposed the motion on December 15, 2025. ECF No. 22. On April 22, 2026, the Court scheduled oral argument for May 28, 2026, to address: (1) whether the alleged speech is protected; (2) whether the alleged retaliatory acts are sufficiently connected to protected speech or conduct; (3) whether the allegations collectively show a pattern of antagonism; and (4) whether any claims should be analyzed under the public employee speech framework, including whether Plaintiff spoke as a citizen on a matter of public concern. ECF No. 23. Oral argument was held on May 28, 2026. ECF No. 24.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion

couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

### III. DISCUSSION
#### a. Plaintiff's Reliance on Pre-*Twombly* Authority is Misplaced

During oral argument, Plaintiff repeatedly relied on *Thomas v. Independence Township* for the proposition that a civil rights complaint is not subject to dismissal due to the absence of factual allegations, specifically emphasizing the Third Circuit's statement, quoting *Alston v. Parker*, that "a plaintiff need not plead facts" but instead need only "make out a claim upon which relief can be granted." 463 F.3d 285, 295–96 (3d Cir. 2006) (citing *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)). Plaintiff's reliance on *Thomas* and *Alston* is misplaced. Both decisions were issued before the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, which rejected the permissive notice-pleading framework on which those cases relied. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570)). Under the now-governing plausibility standard, a complaint must contain sufficient factual matter, accepted as true, to permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Accordingly, to the extent *Thomas* and *Alston* suggest that a plaintiff may survive dismissal without pleading facts sufficient to support a plausible claim for relief, those decisions have been superseded by intervening Supreme Court precedent.

Under the proper pleading standard, Plaintiff's claims fail as a matter of law for the reasons discussed below.

**b. Plaintiff's First Amendment Retaliation Claim (Count I) is Dismissed With Prejudice**

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) [s]he engaged in constitutionally protected conduct; (2) [s]he suffered retaliatory action sufficient to deter a person of ordinary firmness from exercising h[er] constitutional rights; and (3) a causal connection between the protected activity and the retaliatory act." *Forish v. Brasile*, No. 2:23-CV-1316, 2024 WL 3046996, at *3 (W.D. Pa. June 18, 2024) (citation omitted). A plaintiff may establish the requisite causal connection by demonstrating either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* (citation omitted).

Here, the Court need not decide whether Plaintiff was acting as a public employee or an elected official because, even under the public-employee framework, which affords broader First Amendment protection than would be available if Plaintiff's speech were treated as official governmental speech, Plaintiff fails to state a plausible claim.[1] *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022) ("[s]peech by government employees receives less protection than speech by members of the public."). "A public employee's speech is constitutionally protected when (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer lacked an adequate justification for treating the employee differently from any other member of the general public based on its needs as an employer." *Kimbrough v. Bucks Cnty.*, 763 F. Supp. 3d 700, 708 (E.D. Pa. 2025) (citations omitted). Speech involves a matter of public concern when it can reasonably be viewed as relating to political, social, or other issues of interest to the community, or when it concerns a topic of legitimate public or newsworthy interest. *See id.* However, where the speech

---

[1] Regardless of whether Plaintiff spoke as a private citizen, public employee, or elected official, each alleged instance of speech fails for the reasons identified.

focuses solely on the employee's personal issues, it constitutes a personal grievance rather than protected speech, even if those issues incidentally touch on matters of public concern due to the employee's public role. *See id.*

### A. Constitutionally Protected Conduct

In her Amended Complaint, Plaintiff identifies seven instances of purportedly "constitutionally protected" conduct. ECF No. 20 ¶¶ 89(a)–(g). The Court addresses each in turn.

### i. Public Criticism of Defendant Mitchell Upon Resigning from the Police Pension Committee.

Plaintiff alleges, on December 2, 2021, she "spoke publicly, and critically" of Defendant Mitchell. *Id.* ¶¶ 23, 99(a). That allegation is impermissibly conclusory and does not satisfy the pleading standards at the motion to dismiss stage. *Id.* ¶ 89(a). Since so much of what Plaintiff claims to be unlawful retaliation allegedly flows from this speech, the Court needs more than a conclusion that the speech was "critical" to determine whether it was protected. Plaintiff fails to identify what was said, to whom, or how the speech implicates First Amendment protections.[2] Without factual allegations describing the content of the speech, the Court cannot, for instance, determine whether Plaintiff spoke as a citizen or whether the speech related to any matter of political, social, or other concern to the community as required. *See Kimbrough*, 763 F. Supp. 3d at 708. Instead, the allegations indicate that the speech arose from Plaintiff's participation in a Township committee and her resignation therefrom, but Plaintiff provides no factual allegations from which Defendants, or the Court can determine whether the speech reflected an internal dispute as opposed to a matter of public concern.

Even assuming Plaintiff spoke as a private citizen, her claim still fails because she alleges only that she "spoke publicly, and critically" of Defendant Mitchell. Such a bare characterization

---

[2] It is alleged this speech occurred on December 2, 2021. ECF No. 20 ¶¶ 23, 99(a).

of the speech, without factual allegations regarding what was said or the subject matter of the speech, is insufficient to plausibly allege constitutionally protected activity.

Accordingly, Plaintiff again fails to plausibly allege that her "criticism" of Defendant Mithcell constitutes protected activity.

### ii.    Plaintiff's Objection to Not Receiving a New Laptop.

Plaintiff next alleges her "objection" to receiving a refurbished laptop constitutes protected speech.[3] This conclusion leaves the Court hanging as to what, if any, speech was undertaken by Plaintiff here. Moreover, assuming for argument her bald assertion of having objected to a lesser computer is an exercise of speech, the little factual support provided fails to establish it was protected by the First Amendment as opposed to the obvious conclusion it was an internal workplace grievance. ECF No. 20 ¶ 89(b). Speech that addresses personal employment conditions, rather than matters of public concern, is not constitutionally protected. *See Howell v. Millersville Univ. of Pennsylvania* 283 F. Supp. 3d 309, 335 (E.D. Pa. 2017), aff'd, 749 F. App'x 130 (3d Cir. 2018) (citing *Miller v. Clinton Cty.,* 544 F.3d 542, 551 (3d Cir. 2008) ("Even if it brush[es] ... against a matter of public concern by virtue of the employee's public employment, speech that addresses only the employee's own problems expresses only a personal grievance and does not receive First Amendment protection."). Plaintiff does not allege that her objection exposed fraud, corruption, misuse of public resources, or otherwise implicated public concerns; instead, it reflects dissatisfaction with tools provided to her in her official capacity.

As such, it is not speech as a citizen on a matter of public concern and cannot satisfy the first element of a retaliation claim. Accordingly, this allegation cannot sustain a retaliation claim.

---

[3] It is alleged that the denial of a new laptop occurred on an unspecified date in January 2022. ECF No. 20 ¶ 24.

### iii.    Plaintiff's Efforts to Retain or Appoint a Deputy.

Plaintiff claims her sparsely articulated efforts to retain or appoint a deputy constitute protected First Amendment activity. Again, Plaintiff gives the Court very little of the when's, who's, and how's from which it can discern an incident of protected speech as opposed to a personal grievance regarding the internal staffing and operation of her office.[4] ECF No. 20 ¶ 89(c). Indeed, even with the inferences due, Plaintiff fails to establish that the alleged interference with her efforts to retain a deputy constitutes speech. And even if it did, the Court is given next to nothing from which to find it plausible that such speech was protected. If anything, rather than speaking as a citizen on a matter of public concern, Plaintiff's allegations reflect a disagreement over personnel decisions and how her office should function. Such complaints fall squarely within the type of "day to day minutiae" of government employment that courts have found unprotected. *See Howell*, 283 F. Supp. 3d at 338 (finding that Plaintiff did not speak about a matter of public concern because the speech was about his own work environment). Plaintiff does not allege that her actions were intended to inform the public or expose misconduct; instead, they concern her dissatisfaction with internal administrative decisions. As such, they constitute a personal grievance and are not protected under the First Amendment.

### iv.    Plaintiff's Filing of a Hostile Work Environment Complaint.

Plaintiff claims as protected speech her January 2023 "filing" of a hostile work environment complaint with the attorneys for Defendant Township. ECF No. 20 ¶ 89(d). We are again left to guess at whether the complaint constitutes protected speech. At best, the Court might infer Plaintiff's complaint was in regard to Defendant Mitchell's alleged "ire" towards her. *Id.* ¶ 29. But inferring this conclusion does not provide the Court with context from which it can

---

[4] The best the Court can tell from the allegations in the Amended Complaint is the deputy retention dispute took place in March 2024, approximately 14 months after Plaintiff assumed Office. ECF No. 20 ¶¶ 51-61.

evaluate a protected right.[5] Although a public employee may speak as a citizen when addressing matters outside the scope of official duties, the Amended Complaint does not describe the substance of Plaintiff's complaint; and the Court is not going to guess.

Unlike in *Starnes v. Butler Cnty. Ct. of Common Pleas*, *50th Jud. Dist.,* where the complaint involved allegations of judicial misconduct and abuse of power, Plaintiff here provides no factual allegations indicating that her complaint addressed a matter of public concern. 971 F.3d 416, 429 (3d Cir. 2020). Absent such detail, Plaintiff fails to plausibly allege constitutionally protected conduct.

### v.    Plaintiff's Refusal to Deal Directly with Defendant Ryan.

Plaintiff next claims protected status for her October 2023 email or letter to the Township indicating she would no longer communicate with Defendant Ryan after he called Plaintiff the "worst tax collector ever" at a public meeting.[6] ECF No. 20 ¶¶ 41-21, 99(c). Plaintiff's alleged speech here does not rise to the level of a matter of public concern. Rather, the content, form, and context of her conduct characterize it as a personal grievance stemming from an interpersonal workplace dispute. Plaintiff alleges that on or about October 20, 2023, she sent an email stating that she would no longer work directly with Defendant Ryan after he publicly referred to her as "the worst tax collector ever." *Id.* ¶¶ 89(e), 99(c). There is nothing in the Amended Complaint indicating Plaintiff's communication here was directed to the public or any broader audience, but instead was confined to an internal workplace audience, with only internal workplace context related to Plaintiff's working relationship with a colleague.

---

[5] At oral argument, Plaintiff argued that the Court could assume she was subjected to a hostile work environment based solely on her characterization of the claim. But Rule 12 requires well-pleaded facts, not conclusory assertions.
[6] Defendants offer public records indicating Defendant Ryan had resigned from his employment with the Township prior to Plaintiff's letter. ECF No. 21-2 at p. 5.

As in *Howell*, such "inside baseball" complaints do not address broader political, social, or community concerns, but instead reflect dissatisfaction with workplace dynamics and treatment by coworkers. *Howell*, 283 F. Supp. 3d at 338. Courts have consistently held that complaints involving office relationships, tone, demeanor, or perceived disrespect fall within the "day-to-day minutiae" of public employment and do not implicate First Amendment protection. *See, e.g.*, *Howell*, 283 F. Supp. 3d at 338; *Connick v. Myers*, 461 U.S. 138, 148–49 (1983).

Moreover, Plaintiff's refusal to communicate with Defendant Ryan reflects a response driven by personal offense and self-interest, not an effort to speak as a citizen on a matter of public concern. Like *Howell's* complaints about office morale and his own job responsibilities, Plaintiff's conduct here concerns only her individual work environment and does not implicate any issue of legitimate public interest.

Accordingly, her statement regarding her refusal to communicate with Defendant Ryan is not protected activity under the First Amendment and cannot support a retaliation claim.

### vi.     Plaintiff's Refusal to Sign a Release Agreement.

Plaintiff alleges she was sued by Defendant Township and, in negotiating a settlement, she refused to waive her right to bring a future lawsuit against Defendants. ECF No. 20 ¶¶ 65-66, 89(f), 99(d). She claims this refusal, in October 2024, was an exercise of protected speech. She does not offer any support, nor did the Court find any, for the contention that the exchange and negotiating of terms of settlement agreement, as alleged, is an exercise of speech. This Court concludes that Plaintiff's refusal to sign a release agreement here is not protected First Amendment activity. Plaintiff does not allege that her refusal was a matter of public concern, or that it was communicated beyond the limited, personal context of negotiations between parties to a lawsuit (or their counsel). There is no plausible allegation her refusal to a settlement term sought to expose wrongdoing; instead, it reflects a personal litigation choice made in her own self-interest. *See*

*Howell*, 283 F. Supp. 3d at 338; *see also Connick*, 461 U.S. at 148–49 (1983) (distinguishing between matters of public concern and internal, personal disputes). Like the internal workplace complaints and refusals at issue in *Howell*, Plaintiff's decision here does not rise above the "day-to-day minutiae" of her individual interests and does not implicate any issue of legitimate public interest. Accordingly, Plaintiff fails to plausible allege protected conduct.

### vii.    Plaintiff's Running for Reelection Without Material Interference.

Plaintiff alleges Defendant's interfered with her constitutional right to "run for reelection" for Tax Collector without material interference by Defendants but, again, provides only conclusory statements and unsupported speculation regarding Defendant Mitchell's involvement. ECF No. 20 ¶¶ 75, 89(g), 99(e). The totality of Plaintiff's allegations is as follows: (1) "[f]inally, on or about May 15, 2025, the Cocalico Republican Committee circulated a mailer among registered Republicans falsely accusing Plaintiff of mismanagement in the Tax Collector Office and that there were more than 100 pages of complaints lodged against Plaintiff"; (2) "[i]t is believed and therefore averred that the mailer is based on false information provided by Defendant Mitchell, which action was motivated by his desire to further retaliate against Plaintiff and to materially interfere with her reelection bid"; and (3) "[i]n January of 2025, Plaintiff publicly announced that she intended to run for reelection to the Tax Collector office. The next mailer sent *en masse* to township Republicans was issued on or about May 5, 2025. The mailer contained false and defamatory accusations about Plaintiff, which information is believed to have been provided by Defendant Mitchell to interfere with Plaintiff's re-election bid." *Id.* ¶¶ 74-75, 99(e). As pleaded, these allegations lack the factual content necessary to elevate them beyond speculation or to demonstrate any actionable interference with Plaintiff's candidacy. Unlike speech or conduct that meaningfully engages the public or implicates electoral integrity, Plaintiff's assertions are unsupported and devoid of detail regarding how, when, or by whom any interference occurred.

Plaintiff does not allege what "false information" was contained in the political mailers, let alone anything supporting the "belief" that Defendant Mitchell somehow provided such information to Plaintiff's political opponents. At best, Plaintiff alleges Defendant Mitchell must have been involved in disseminating some sort of false statement against Plaintiff to retaliate against her. Such circular bootstrapping is not sufficient. Devoid of meaningful factual content, Plaintiff's allegations are conclusory and insufficient to plausibly establish protect First Amendment activity.

Thus, as set forth above, each category of alleged conduct reflects either conclusory assertions or internal workplace grievances that do not rise to the level of constitutionally protected speech. Because Plaintiff fails to satisfy the threshold requirement of protected conduct, her First Amendment retaliation claim cannot proceed.

### B. Retaliatory Actions

The Court having found that Plaintiff fails to plausibly allege any protected speech, it need not examine the sufficiency of the alleged retaliatory acts. Nevertheless, Plaintiff's allegations would fail for the independent reason that she has not plausibly alleged either actionable retaliation or a causal connection between any protected expression and the challenged conduct.[7]

---

[7] At oral argument, Plaintiff acknowledged her retaliation claim is based on both discrete acts of retaliation and a broader "pattern of antagonism," whereby otherwise lesser adverse actions may become materially adverse when viewed in the aggregate over time. Plaintiff further noted that such a pattern may also, in appropriate cases, inform the causation analysis by diminishing the significance of temporal gaps between protected activity and alleged retaliation, where repeated adverse conduct supports an inference of retaliatory motive over time.

Taking brief stock of the alleged retaliatory actions, Plaintiff first asserts that Defendants retaliated against her in January 2022 by providing a refurbished laptop rather than a new one, thus packaging this event as both protected speech and a retaliatory act. ECF No. 20 ¶¶ 24–28, 89(b), 90(a)–(b). However, the prospect of a lesser computer is not likely to "deter a person of ordinary firmness from exercising her constitutional rights." *Forish*, 2024 WL 3046996, at *3. Plaintiff next finds retaliation one year later, in January 2023, in an allegedly threatening letter sent to her by Defendants' counsel "within days" of her filing of a hostile work environment complaint. ECF No. 20 ¶¶ 29–32, 90(c). In a chronic shortcoming of her pleading, Plaintiff provides only a vague,

Accordingly, Plaintiff's First Amendment retaliation claim (Count I) is dismissed with prejudice.[8]

### c.  Plaintiffs *Monell* Claim (Count II) is Dismissed With Prejudice

Plaintiff brings a claim against Defendant ECT under 42 U.S.C. § 1983. A § 1983 claim against a municipality may proceed in two ways. "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations omitted). This *Monell* claim fails because the Court

---

conclusory allegation that the letter was "threatening," failing to provide language or details or any sufficient factual matter to support this characterization. Plaintiff likewise fails to support her conclusory allegations of retaliation in the February 2023 "false blame" she says Defendants put on her for delays in tax invoicing, *id.* ¶¶ 40, 90(d), Defendant Ryan's October 2023 statement that she was the "worst tax collector ever," *id.* ¶¶ 41, 90(f), the November 2023 adoption of a governing ordinance by the Township Board of Supervisors outsourcing tax collection services, *id.* ¶¶ 44–50, 74–76, 90(g)–(i), and the March 2024 interference with her selection or retention of a deputy, *id.* ¶¶ 50–61, 65, 90(e).

Plaintiff's alternative reliance on a pattern of antagonism fares no better. As Plaintiff also acknowledged at oral argument, the individual acts comprising any alleged pattern of antagonism must be supported by non-conclusory factual allegations sufficient to satisfy Rule 12(b)(6). A plaintiff cannot rely on an aggregation of vague or conclusory allegations to establish a pattern of antagonism where the underlying incidents, considered individually, are each insufficiently supported by factual content. Moreover, the alleged incidents of retaliation here, involving varying defendants, span more than forty months, and are twice separated by temporal gaps exceeding one year, further diminishing any plausible inference of a sustained course of retaliatory conduct. *See id.* ¶¶ 16, 98.

Accordingly, Plaintiff has failed to plausibly allege retaliatory conduct or a causal connection between any protected expression and the challenged actions.

[8]  The Third Circuit recognizes that the Court must offer amendment in civil rights cases "when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017). The Court concludes that further attempts to amend would be futile, as Plaintiff has already been given a chance to amend. *See United States v. Eastwick College*, 657 F. App'x 89, 97 (3d Cir. 2016) ("[A] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.").

found the alleged underlying constitutional violations failed. However, even if Plaintiff had alleged a plausible violation there would be no *Monell* liability here.

### i.   Policy-Custom Claims

Under the first theory of liability, a plaintiff must establish the existence of a policy or custom and demonstrate an "'affirmative link between the policy or custom and the particular constitutional violation [she] alleges.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A policy is made when a decisionmaker possessing final authority to establish municipal policy issues an official proclamation, policy, or edict. *Id.* (citations omitted). A custom, by contrast, may be established by showing that a course of conduct, though not formally authorized, is so well-settled and permanent as to have the force of law. *Id.* (citations omitted).

Plaintiff fails to plausibly connect any identified policy or custom to a constitutional violation. Specifically, Plaintiff alleges that Defendant ECT: (1) failed to provide her with a new laptop necessary to perform her job duties; (2) enacted an ordinance directing that LSTs be collected by the Lancaster County Tax Bureau rather than the Tax Collector, resulting in a reduction of her income; and (3) adopted a 2025 budget that consolidated hydrant and streetlight taxes into real estate taxes, likewise resulting in a reduction of her income. ECF No. 20 ¶¶ 108–12. However, Plaintiff does not allege facts showing how any of these actions are causally linked to the asserted violations of the First or Fourteenth Amendments.

Instead, Plaintiff offers only the conclusory assertion that "[t]his conduct exhibited deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately ***caused the violations of Plaintiff's constitutional and federal rights*** as set forth herein and in the other claims." *Id.* ¶ 114 (emphasis added). Such bare, conclusory allegations of constitutional violations are insufficient to state a claim.

14

"Where a complaint contains only conclusory allegations, it 'fail[s] to satisfy the 'rigorous standards of culpability and causation' required for municipal liability.'" *Leathers*, 2025 WL 327313, at *5 (quoting *Young v. City of Chester* 764 F. App'x 262, 265 (3d Cir. 2019)); *see Oliver v. City of Phila.*, 2025 WL 1902298, at *10 (E.D. Pa. July 9, 2025) (quoting *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009)) ("Allegations that 'simply paraphrase[]' the standard for municipal liability are too vague and generalized to support a *Monell* claim.").

### ii. Failure-or-Inadequacy Claims

Plaintiff also attempts to state a claim for municipal liability on the basis of failure to "offer[] or implement any [updated training regarding whistleblower and Title VII laws]." ECF No. 20 ¶¶ 116–17. A plaintiff pursuing a claim based on a municipality's failure to train or supervise need not identify a formal unconstitutional policy or custom, but must still show that municipal policymakers acted with deliberate indifference. *See Forrest*, 930 F.3d at 117. "Under *Monell*, deliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.' Ordinarily, this means that a plaintiff must show that '[a] pattern of similar constitutional violations' put the city on notice that, by failing to act, it was being deliberately indifferent to [a citizen's] rights." *Hightower v. City of Phila.*, 130 F.4th 352, 357 (3d Cir. 2025) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Plaintiff's claim under this theory fails. First, the alleged prior incidents do not establish a pattern of similar violations sufficient to provide notice to Defendants. Because these complaints were investigated contemporaneously with the alleged misconduct, they could not have provided Defendants with prior notice of a pattern of similar constitutional violations. Moreover, even if these incidents arguably put Defendant ECT on notice of deficiencies in training, they concerned

15

subject matter unrelated to Plaintiff's asserted constitutional violations and therefore cannot establish the requisite pattern of similar violations necessary to show deliberate indifference.

As courts have recognized, "[o]rdinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Hargrove v. City of Phila.*, 671 F. Supp. 3d 595, 606 (E.D. Pa. 2023) (citation omitted). This is because, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff alleges that "[a]s a result of the investigation of the hostile work environment complaints made by Plaintiff, Ms. Lumis and Mr. Keppley, the investigating attorney recommended updated training regarding whistleblower and Title VII laws be provided to ECT employees and elected officials[,]" but that ECT never "offered or implemented any such training." ECF No. 20 ¶¶ 116–17. Even accepting these allegations as true, they do not plausibly establish deliberate indifference. The recommendation arose from the same investigation into the contemporaneous complaints and therefore did not provide Defendants with prior notice of a pattern of similar constitutional violations before the alleged misconduct occurred. At most, the recommendation reflects a generalized suggestion for improved training, not notice that a specific deficiency in training was causing—or would predictably cause—recurring constitutional violations. Nor does Plaintiff allege facts showing that the absence of such training made the alleged violations a known or obvious consequence of ECT's inaction.[9]

---

[9] At oral argument, Plaintiff argued it was sufficient that she allege a general adversion to remedial training on the township's part. The Court disagrees.

Absent allegations of a prior pattern of similar violations, Plaintiff fails to plausibly plead that ECT's failure to implement the recommended training amounted to deliberate indifference under *Monell*.

Thus, Plaintiff fails to state a claim and Count II is dismissed with prejudice.

### d.  Plaintiffs Equal Protection Claim (Count III) is Dismissed With Prejudice

Plaintiff alleges that Defendants violated her Fourteenth Amendment right to equal protection by subjecting her to "severe and pervasive harassment" based on her status as a "gay, female." ECF No. 20 ¶ 123. The Fourteenth Amendment prohibits states from denying any person "the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim, a plaintiff must plausibly allege that she was treated differently from similarly situated individuals (discriminatory effect) and that this differential treatment was motivated by an intent to discriminate on impermissible grounds (discriminatory purpose). *See Westrich v. Malvern Borough*, No. 2:24-CV-02632-KBH, 2025 WL 2147360, at *6 (E.D. Pa. July 29, 2025).

"Persons are similarly situated for purposes of an equal protection claim when they are alike 'in all relevant aspects.'" *Id.* (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). "To identify a proper comparator, a plaintiff must plead more than 'broad generalities,' and courts must 'isolate the factor allegedly subject to impermissible discrimination,' typically the characteristic that defines membership in a protected class." *Id.* (citing *Stradford v. Sec'y Pennsylvania Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022)).

Here, Plaintiff fails to meet that standard. Although she identifies certain individuals—Financial Administrator Judy Lumis, ECT Police Chief Darrick Keppley, and her predecessor Kurt Fitchhorn—as purported comparators, she does not allege sufficient facts to show that they are alike to her in all, or any, relevant respects. For example, while Plaintiff asserts that Ms. Lumis and Mr. Keppley filed hostile work environment complaints without receiving similar

17

correspondence from Eckert Seamans, she does not plead facts regarding the substance of those complaints (or her own complaint), the circumstances under which they were made, their respective roles and responsibilities, or whether they were otherwise similarly situated to Plaintiff in terms of job duties, supervisory structure, or employment conditions. ECF No. 20 ¶¶ 125(a)–(b). Likewise, her allegations regarding Mr. Fitchhorn—that he received greater resources and compensation—are devoid of context as to whether he operated under similar conditions, policies, or constraints. *Id.* ¶ 125(c).

Absent such factual detail, Plaintiff's comparator allegations amount to little more than conclusory assertions and "broad generalities," which are insufficient to state an equal protection claim. Accordingly, she has not plausibly alleged that these individuals are valid comparators for purposes of establishing disparate treatment, thus the Equal Protection Claim (Count III) is dismissed with prejudice.

### e.   Plaintiffs Claim Under 42 U.S.C. § 1985 (Count V) is Dismissed With Prejudice

To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Fennell v. Kostura*, No. CV 19-669, 2019 WL 2615484, at *12 (E.D. Pa. June 25, 2019).

Plaintiffs § 1985 claim again fails for the same reasons that her Equal Protection claim fails, as Plaintiffs § 1985 claim is premised on the same factual basis as her Equal Protection claim. As explained above, Plaintiff has not sufficiently alleged that she was treated differently than any comparable or similarly situated individuals. *See id.* (finding that Plaintiffs equal protection claim fails because he does not allege different treatment from similarly situated individuals and

"[w]ithout an equal protection claim, [Plaintiff] cannot state a claim under Section 1985."); *see also supra* pp. 17-18.

Thus, Count V is dismissed with prejudice.

### f.  This Court Declines to Exercise Jurisdiction Over the Remaining State Law Claims (Counts IV, VI, and VII)

This Court initially had jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), which provides supplemental jurisdiction over state law claims "within such original jurisdiction that they form part of the same case of controversy." After dismissing Counts I, II, III, and V, the only claims that remain are the state law claims against Defendants which allege Civil Conspiracy (Count IV), Intentional Infliction of Emotional Distress (Count VI), and Violation of Pennsylvania's Local Tax Collection Law (Count VII). With all federal claims now dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims, as there is no affirmative justification to do otherwise. *See* 28 U.S.C. § 1367(c) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); *see also Stone v. Martin*, 720 F. App'x 132, 135 (3d Cir. 2017) (directing that district courts "must decline to exercise supplemental jurisdiction in such circumstances unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (citation omitted).

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge